UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL SWANSON,

        Plaintiff,

v.

INSTAGRAM LLC,

        Defendant.

CASE NO. C15-503 MJP

ORDER ON MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court on Plaintiff Michael Swanson's Motion for a Preliminary Injunction. (Dkt. No. 17.) Having reviewed the Motion, Defendant's Response (Dkt. No. 23), Plaintiff's Reply (Dkt. No. 28), and all related papers, and having heard oral argument on September 2, 2015, the Court hereby DENIES the Motion because Plaintiff has not shown a likelihood of success on his contention that the name Layout is protectable as an unregistered trademark for a mobile application (or "app").

**Background**

In 2012 Plaintiff Michael Swanson, d/b/a Juicy Bits, created a photo-editing app for Apple smartphones and tablets, which he called "Layout" and offered for sale via download.

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION- 1

1  (See Swanson Decl., Dkt. No. 18 at 2.) It has been downloaded 27,000 times since its release in

2  the United States and Canada and has received some favorable publicity, including designation

3  in Apple's App Store as an "Editor's Choice" and "App Store Best of 2012." (Id. at 4.)

4        Defendant Instagram's similar photo-editing app, known as "Layout" or "Layout from

5  Instagram," was released in March of 2015. (Id. at 5.) Several online news items referred to or

6  linked to Plaintiff's Layout when attempting to discuss Defendant's Layout. (See Dkt. No. 18 at

7  5; Dkt. No. 1, Exs. H, I, J.) In March of 2015, Plaintiff's Layout was downloaded at a rate far

8  exceeding the typical monthly download rate for his app. (See Dkt. No. 18 at 5 & Ex. F.)

9        Plaintiff now moves for a preliminary injunction on his claim for infringement of

10  common law trademark rights.

**Discussion**

12      I.    Legal Standard for Preliminary Injunction

13        A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

14  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

15  balance of equities tips in his favor, and that an injunction is in the public interest. Winter v.

16  Natural Res. Def. Council, 555 U.S. 7, 20 (2008).

17        A basic question going to likelihood of success on the merits of a trademark infringement

18  claim is whether the plaintiff's alleged mark is valid and protectable. See Grocery Outlet, Inc. v.

19  Albertson's, Inc., 497 F.3d 949, 951 (9th Cir. 2007) (per curiam).

20      II.    Trademark Status and Generic Terms

21        "Section 43(a) of the Lanham Act makes actionable the deceptive and misleading use in

22  commerce of 'any word, term, name, symbol, or device' on any goods or in connection with any

23  goods." Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1046 (9th Cir.

24

1  1998) (quoting § 43(a) (codified as amended at 15 U.S.C. § 1125(a)). Section 43(a) "protects
2  qualifying unregistered trademarks and that the general principles qualifying a mark for
3  registration under § 2 of the Lanham Act are for the most part applicable in determining whether
4  an unregistered mark is entitled to protection under § 43(a)." Two Pesos, Inc. v. Taco Cabana,
5  Inc., 505 U.S. 763, 768 (1992). To state an infringement claim, a plaintiff must meet three basic
6  elements (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion. Kendall-
7  Jackson, 150 F.3d at 1047. "Generic" names are not protectable as trademarks because they lack
8  distinctiveness by definition, while "descriptive" and "suggestive" marks (as well as "arbitrary"
9  and "fanciful" marks) may be protectable. Two Pesos, 505 U.S. at 768. Suggestive marks
10 automatically fulfill the distinctiveness element of an infringement claim, while descriptive
11 marks can fulfill the distinctiveness element only if they acquire "secondary meaning" wherein
12 the public comes to associate the mark with a specific source. See Kendall-Jackson, 150 F.3d at
13 1047.

14         Defendant Instagram argues "Layout" is incapable of protection as a trademark because it
15 is generic. (Dkt. No. 23 at 9.) "Generic" names "refer to the genus of which the particular
16 product is a species." Two Pesos, 505 U.S. at 768 (alterations omitted). "To determine whether a
17 term is generic, [the Court] looks to whether consumers understand the word to refer only to a
18 particular producer's goods or whether the consumer understands the word to refer to the goods
19 themselves." Advertise.com, Inc. v. AOL Advertising, Inc., 616 F.3d 974, 977 (9th Cir. 2010).
20 "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who
21 vouches for you?' But the generic name of the product answers the question 'What are you?'" Id.
22 at 978 (alteration omitted). A trademark-eligible "descriptive" mark, by comparison, describes
23 the qualities or characteristics of a product. Id. at 977.

24

1    In the context of applications for mobile devices, whose identity or nature is inseparable
2 from the function or functions the app performs, the test for identifying generic product names
3 may be more productively conceived as the question "What do you do?" (as opposed to the
4 mark-identifying questions "Where do you come from?" or "Who offers you?"). Here, the word
5 "Layout" refers directly to the function provided by the app. A common term in print journalism
6 and publishing, the word "layout" means, according to definitions provided by both Plaintiff and
7 Defendant, "arrangement." (See Billick Decl., Dkt. No. 19 (citing Merriam-Webster, Collins,
8 and Dictionary.com definitions of "layout"); Butters Decl., Dkt. No. 25-1 at 6–7).) In the words
9 of Plaintiff in business communications written prior to this lawsuit, the app is "all about laying
10 out photos in a grid formation." (Mepani Decl., Dkt. No. 26-1 at 64.) In another email, he
11 explained, "[t]he app is called 'Layout', and it will be one of many, many 'photo layout' apps."
12 (Id.) The description of the central function of "Layout" in Apple's App Store, meanwhile,
13 corresponds directly with the parties' agreed definition of the word: "Layout makes it easy to
14 arrange your photos, tell stories, and share with friends." Id. at 71 (emphasis added). The word
15 "Layout" thus describes the essential function of the app with that name: arranging multiple
16 photographs to form "layouts."
17    True to Plaintiff's prediction that "Layout" would be "one of many, many 'photo layout'
18 apps," Instagram points to several instances of other apps released both before and after
19 Plaintiff's whose titles incorporate the word "layout," including apps with apparently similar
20 functions called "Photo Layout Finger Design," "Layout for Instagram & More," and "Pro Photo
21 Layout." (Dkt. No. 23 at 13; Kursch Rep., Dkt. No. 27-1 at 22.) "Courts view a [term's] use by
22 competitors as 'strong evidence of how the public perceives the term'" because "when more
23 members of the public see a mark used by several producers in the industry, the less likely they
24

1  will identify a particular producer with that mark." CG Roxane LLC v. Fiji Water Co. LLC, 569

2  F.Supp.2d 1019, 1027 (N.D. Cal. 2008) (quoting Classic Foods Int'l Corp. v. Kettle Foods, Inc.,

3  468 F.Supp.2d 1181, 1190 (C.D. Cal. 2007)). Present use by competitors also points to the policy

4  reason for denying trademark protection to generic terms: ""To allow trademark protection for

5  generic terms, even when they have become identified with a first user, would grant the owner of

6  the mark a monopoly, since a competitor could not describe his goods as what they are."

7  Advertise.com, 616 F.3d at 981. The fact that creators of other apps find the word "layout"

8  useful in naming the central function of their apps confirms the utility of the word as opposed to

9  its distinctiveness.

10      The Court concludes that the term "Layout" is generic when used in the context of

11  mobile applications and is therefore not protectable as a common law trademark.

12                                          **Conclusion**

13      Because "Layout" is not protectable as a common law trademark, Plaintiff has failed to

14  show a likelihood of success on his claim. The motion for a preliminary injunction is therefore

15  DENIED.

16

17      The clerk is ordered to provide copies of this order to all counsel.

18      Dated this 9th day of September, 2015.

19

20                                          _____
                                            Marsha J. Pechman
21                                          Chief United States District Judge

22

23

24

ORDER ON MOTION FOR PRELIMINARY
INJUNCTION- 5